UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-20685-CR-WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ABRAHAM EDGARDO ORTEGA,

    Defendant.

_____/

## ORDER

**THIS MATTER** is the before the Court on Petróleos de Venezuela, S.A.'s ("PDVSA") motion for victim status and restitution. (DE 191). The Government filed a response (DE 193) and PDVSA filed a reply (DE 205). The Government also submitted supplemental authority and exhibits (DE 202; DE 213; DE 409). On August 10, 2020, the Court held a telephonic hearing on PDVSA's motion. Following the hearing, PDVSA filed a supplemental statement (DE 222) addressing two cases raised during the hearing, to which the Government filed a response (DE 223). Based on the record, arguments of counsel during the August 10, 2020 hearing, and for the reasons provided below, PDVSA's motion is **DENIED**.

    **I.**    **BACKGROUND**

On October 31, 2018, Abraham Ortega entered into a plea agreement with the Government and pled guilty to charges of conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1957(a). (DE 64). As part of his plea agreement, Mr. Ortega agreed to forfeit all property involved in the violation of Section 1956(h) and/or property that constitutes substitute assets, pursuant to 18 U.S.C. § 928(a)(1) and 21

U.S.C. § 853(p). *Id.* The Government and Mr. Ortega stipulated and agreed that if the matter were to proceed to trial, the Government would prove the facts provided in the factual proffer beyond a reasonable doubt. (DE 65). The factual proffer provides, in pertinent part, the following. From August 2004 through March 2016, Mr. Ortega worked in various positions within PDVSA. *Id*. During the period between January 2014 and March 2016, he was the Executive Director of Financial Planning at PDVSA. *Id*. PDVSA, Venezuela's primary source of income and foreign currency, "served as the source of foreign currency used to fund corrupt foreign exchange embezzlement schemes." *Id*. More specifically, "Ortega and others conspired to launder and engage in monetary transactions with the proceeds of corrupt currency exchange schemes involving PDVSA." *Id*. Mr. Ortega participated in a bribery scheme, identified as the "Joint-Venture Scheme," in which he "received a total of 5 million U.S. Dollars in exchange for acts and decisions in his official capacity." *Id.* He also "conspired to execute a corrupt currency exchange scheme involving bribes to PDVSA officials," and as part of that scheme received 10 million U.S. Dollars as a bribe payment. *Id.* The factual proffer also provides information as to other corrupt PDVSA loan schemes and schemes to launder proceeds.

**II.    ANALYSIS**

PDVSA seeks to be recognized as a victim of the crime Mr. Ortega committed and moves for an award of restitution in the amount of $560,033,118.19.[1] (DE 191). Specifically, PDVSA argues that it is a victim under the Mandatory Victims Restitution Act

---

[1] To calculate this award, PDVSA relies on the Government's calculation, based on emails between coconspirators discussing money transferred from PDVSA's accounts. (DE 3.) PDVSA did not, however, provide the Court with any documentary or testimonial evidence to substantiate its claim that it suffered pecuniary losses in excess of $560 million. *See United States v. Flores*, No. 17-cr-00537, ECF No. 80 (E.D.N.Y. May 13, 2021).

of 1996 ("MVRA"), 18 U.S.C. § 3663A, and the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, and that it is entitled to restitution under the MVRA.

### A. Crime Victims' Rights Act

Under the Crime Victims' Rights Act, a crime victim has, among other things, "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771. The CVRA defines "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." *Id.*; *see also In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1238 (11th Cir. 2014). The Government argues that PDVSA is not a victim under the CVRA because the CVRA's definition of "person" does not include sovereign entities like PDVSA. As discussed during the August 10, 2020 hearing, the Court agrees.[2] *See Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000) (applying the "longstanding interpretive presumption that 'person' does not include the sovereign"); *Return Mail, Inc. v. United States Postal Serv.*, 139 S. Ct. 1853, 1863, 204 L. Ed. 2d 179 (2019) (noting the "presumption that a statutory reference to a 'person' does not include the Government.").

While "person" is not defined under the CVRA, the Court's finding that PDVSA, a state-owned instrumentality, is *not* a "person," and therefore not a victim under the CVRA, is guided by the Eleventh Circuit's consideration of this issue in *In re: Empresa Publica de Hidrocarburos del Ecuador*, No. 20-11052-Q, at 2 (11th Cir. May 26, 2020) (Order Den. Pet. for Writ of Mandamus). The Eleventh Circuit explained that, "[i]n the absence of express statutory language suggesting otherwise, the presumption that the definition of 'person' excludes the sovereign applies here and therefore, PetroEcuador—a

---

[2] The Court notes that PDVSA did not appear to challenge this conclusion during the hearing, and instead relied on its asserted victim status under the MVRA.

corporation owned entirely by Ecuador—is not a victim within the meaning of the CVRA." *Id.* It is undisputed here that the Republic of Venezuela is PDVSA's sole shareholder. Indeed, PDVSA identifies itself in its motion as "Venezuela's state-owned oil and natural gas company." (DE 191). Thus, the Court finds that PDVSA, Venezuela's state-owned oil and natural gas company, does not meet the definition of "victim" under the CVRA. *See* DE 213.[3]

### B. Mandatory Victims Restitution Act

PDVSA also asserts that it qualifies as a victim under the MVRA and meets the Act's requirements for mandatory restitution. (DE 191). "The 'primary and overarching purpose' of the MVRA, enacted in 1996, is to 'make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.'" *United States v. Collins*, 854 F.3d 1324, 1329 (11th Cir. 2017) (quoting *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006)). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A. To establish direct and proximate cause, PDVSA "must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either

---

[3] In its supplemental exhibits, the Government provides Exhibit D to the Bolivarian Republic of Venezuela's Annual Report on Form 18-K to the United States Securities and Exchange Commission for the fiscal year ended December 31, 2014 (DE 213-1) and for the fiscal year ended December 31, 2016 (DE 213-2). The exhibits provide, in pertinent part, that "[t]o manage the assets acquired by the nationalization of the domestic oil industry, the Government decided to create PDVSA in 1975 **by giving the Republic the sole ownership of the company** . . . Since its inception in 1975, PDVSA has been operating as **a state-owned commercial entity** vested with commercial and financial autonomy." (DE 213-1) (emphasis added). Additionally, the defined terms in DE 213-2 indicate that "'PDVSA' refers to Petróleos de Venezuela, S.A., **the state oil and gas company.**" (DE 213-2) (emphasis added).

factually or temporally)." *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007) (quoting *United States v. Cutter*, 313 F.3d 1, 7 (1st Cir. 2002)).

According to PDVSA, "[t]he record shows that Ortega, then an executive of PDVSA, conspired to embezzle hundreds of millions of dollars from PDVSA and launder the proceeds." (DE 191). PDVSA argues that because the offense at issue, conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1957(a), is a qualifying offense under the MVRA, and because it has suffered a pecuniary loss, it is entitled to restitution.[4] In response, the Government avers that "courts, including the Eleventh Circuit, have concluded that significant policy reasons preclude those involved in criminal activity from being considered victims under the CVRA and MVRA." (DE 193) (citing *In re Wellcare Health Plans, Inc.*, 754 F.3d 1234 (11th Cir. 2014); *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006)). And, more specifically, the Government cites instances where courts in this district and others have denied "attempts by a state-owned entity to claim that it was defrauded by its employees and those individuals who paid bribes in Foreign Corrupt Practices Act ('FCPA') and money laundering prosecutions, holding each time that the state-owned entity did not qualify for victim status and restitution because of its complicity in the crimes." (DE 193; DE 409).

For example, the Government points to *United States v. Juan Andres Baquerizo Escobar*, where the court affirmed and adopted the report and recommendation of the magistrate judge, which, in part, concluded that "Empresa Publica de Hidrocarburos del Ecuador's principals engaged in a level of pervasive, constant, and consistent illegal conduct that precludes recognizing it as a victim under the Mandatory Victim Restitution

---

[4] *See supra* note 1.

5

Act and the Crime Victims' Rights Act." *United States v. Juan Andres Baquerizo Escobar*, No. 1:18-cr-20596, ECF No. 113 at 1 (S.D. Fla. Apr. 1, 2020) (Order Affirm & Adopting R. & R.). The Court agrees that a party's involvement in underlying criminal activity precludes the party from attaining victim status under the MVRA. *See, e.g.*, *In re: Empresa Publica de Hidrocarburos del Ecuador,* No. 20-11430-Q, at 1 (11th Cir. May 26, 2020) (Order Den. Pet. for Writ of Mandamus) ("[T]he district court did not err in denying PetroEcuador relief . . . . [because] [t]he record demonstrates that at least five PetroEcuador employees . . . were involved in the underlying bribery scheme."); *In re Wellcare Health Plans, Inc.*, 754 F.3d at 1234 ("Wellcare's admitted participation as a co-conspirator precludes it from attaining victim status under the CVRA or MVRA."); *United States v. Jose Meluiades Cisneros Alarcon*, No. 1:19-cr-20284, ECF No. 103 at 1 (S.D. Fla. March 3, 2020) (Order Den. Mot. for Restitution) ("[G]iven the evidence that PetroEcuador was complicit in the underlying criminal activity at issue, the Court finds that PetroEcuador's 'participation as a coconspirator precludes it from attaining victim status under the [CVRA] or MVRA.'"); *United States v. Flores*, No. 17-cr-00537, ECF No. 80 at 14-15 (E.D.N.Y. May 13, 2021) (Order Den. Mot. for Restitution) ("[PetroEcuador's] conduct is attributable to the company and precludes an award of restitution.").

Thus, the inquiry turns on whether PDVSA was complicit in the underlying offense at issue. Although PDVSA seeks to characterize Mr. Ortega as a "rogue employee," the record supports a finding that PDVSA was involved in pervasive, constant, and consistent illegal conduct during the relevant time period and, therefore, is not entitled to victim status. *See In re: Empresa Publica*, No. 20-11430-Q, at 1 (concluding that the district court did not err in denying PetroEcuador victim status under the CVRA and MVRA,

"based on the level of 'pervasive, constant, and consistent illegal conduct' among [PetroEcuador's] principals"). To illustrate, the Government explains that charges have been announced "against 15 bribe-paying PDVSA contractors, 11 bribe-receiving PDVSA officials, and 5 intermediaries. And to date, 12 bribe-paying PDVSA contractors, 8 bribe-receiving PDVSA officials, and 1 intermediary have pleaded guilty in connection with the United States' ongoing investigations into corruption at PDVSA," (DE 193) demonstrating that PDVSA "facilitated the culture of corruption" that was the backdrop for Mr. Ortega's scheme. *Flores*, No. 17-cr-00537, ECF No. 80 at 13. *See also In re: Empresa Publica*, No. 20-11430-Q, at 1-2 (where the involvement of "at least five PetroEcuador employees, including . . . high-level employees . . . in the underlying bribery scheme" demonstrated a level of pervasive, constant, and consistent illegal conduct that precluded PetroEcuador from attaining victim status). Indeed, PDVSA acknowledges that "a total of eleven 'bribe-receiving PDVSA officials' have been charged in 'ongoing bribery and money laundering investigations involving PDVSA.'" (DE 205). The Government further avers that "on January 28, 2019, the U.S. Department of Treasury's Office of Foreign Assets Control ('OFAC') added PDVSA to its Specially Designated Nationals and Blocked Persons List, noting what the criminal investigations have made apparent, that PDVSA 'has long been a vehicle for corruption.'" (DE 193).

      PDVSA claims that corruption by former officials does not preclude it from recovering because 1) it "is now under the control of an ad hoc Administrative Board (the 'Board') appointed to prevent further looting, and of the Special Attorney General, who is obliged to recover stolen assets" and "the involvement of the Board and the Special Attorney General cleanses PDVSA of any imputed prior criminal wrongdoing by rogue

7

employees, as would be the case with a receiver," and 2) it was not a perpetrator in the Eaton-Rantor scheme. (DE 205).

As an initial matter, the Court notes that PDVSA has failed to establish that a receivership analysis applies here. PDVSA cites *Sallah ex rel. MRT LLC v. Worldwide Clearing LLC* in support of its argument, but that case is distinguishable and, indeed, highlights why PDVSA's argument fails. 860 F. Supp. 2d 1329 (S.D. Fla. 2011). In *Sallah ex rel. MRT LLC*, a receiver was appointed and authorized to pursue actions under Florida's Uniform Fraudulent Transfer Act. The court specifically determined that the receiver had the authority to pursue claims "*under the language of the order appointing the Receiver.*" *Id.* at 1334 (emphasis added). Here, there has been no order authorizing PDVSA to pursue restitution, nor any evidence advanced or cited to justify any claim recognizing PDVSA as a receiver.[5] However, even if consideration of Florida's Uniform Fraudulent Transfer Act could be applied here to the MVRA, PDVSA has not offered any evidence to support its claim that it "has been 'cleansed' through receivership" to overcome the *in pari delicto* bar cited in *Sallah*. *Id.* at 1336. Accordingly, PDVSA is entitled to an award of restitution only insofar as the MVRA permits such award.

And, under the MVRA, "a perpetrator cannot be his own victim." *In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1239 (11th Cir. 2014). In *In re Wellcare Health Plans, Inc.*, the Eleventh Circuit made clear that "a corporation only acts or wills by virtue of its employees" and "[b]y asking for restitution from its top-level executives, [the petitioner]

---

[5] Although PDVSA stated, in a memorandum regarding substitution of counsel, that the Special Attorney General "'investigate[d] the pending application' in this Court and determined that PDVSA [not the Republic of Venezuela] should apply for restitution," PDVSA has not provided an appropriate predicate or justification for this Court to apply the rationale of a receivership analysis here.

seeks restitution for its own conduct—something that it cannot do." *Id*. at 1240. Although PDVSA argues that it has not been charged or named as a conspirator, the record still supports a finding that PDVSA was, in various ways, complicit in the bribery and money laundering schemes underlying Mr. Ortega's offense.[6] The factual proffer clearly provides that "corrupt foreign currency exchange schemes occurred with **significant frequency** within the Venezuelan state-owned oil company, Petroleos de Venezuela, S.A." (DE 65) (emphasis added). The factual proffer also shows that Mr. Ortega, PDVSA's Executive Director of Financial Planning, was not a "rogue employee" engaging in illegal activity without other PDVSA officials. *See e.g.*, *id.* ("In or about 2012, ORTEGA . . . conspired to execute a corrupt currency exchange scheme *involving bribes to PDVSA officials,* including ORTEGA and Venezuelan Official 5 (the Companies C-D Loan Scheme).") (emphasis added). Thus, based on the record, arguments of counsel during the August 10, 2020 hearing, and applicable law, the Court finds that PDVSA is not entitled to victim status and restitution under the MVRA.[7] *See United States v. Collins*, 854 F.3d 1324, 1329 (11th Cir. 2017) ("A federal district court has no inherent authority to order restitution, and may do so only as explicitly empowered by statute.").

### III.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that PDVSA's motion (DE 191) is **DENIED**.

---

[6] Nor is the Court persuaded by PDVSA's argument regarding the Eaton-Rantor scheme. As the Government correctly states, Mr. Ortega "pleaded guilty in connection with his participation in the Joint-Venture scheme and the loan scheme with Companies C and D, and laundering those funds in the United States. . . . While [Mr. Ortega] may have received the proceeds of the Eaton-Rantor scheme (not knowing their particular source), his conduct could not be the direct and proximate cause of the alleged harm PDVSA attributes to the Eaton-Rantor scheme." (DE 193).

[7] In light of this finding, the Court need not consider the Government's remaining arguments.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>18th</u> day of June, 2021.

                                                                                                       */s/ Kathleen M. Williams*
                                                                                                         KATHLEEN M. WILLIAMS
                                                                                                         UNITED STATES DISTRICT JUDGE